# Assertion of Constitutionally Based Privilege Over Reagan Administration Records

It is legally permissible for President Bush to assert constitutionally based privilege in concurrence with former President Reagan's assertion of constitutionally based privilege over certain Reagan Administration documents that are otherwise required to be released by the National Archives and Records Administration under the Presidential Records Act.

January 12, 2004

LETTER OPINION FOR THE COUNSEL TO THE PRESIDENT

You have requested my advice as to whether it is legally permissible for the President to assert constitutionally based privilege with respect to certain Reagan Administration documents that are otherwise required to be released by the National Archives and Records Administration ("NARA") under the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201–2207 (2000). Former President Reagan has asserted constitutionally based privilege with respect to eleven documents. Under the applicable executive order, there is a strong presumption that the incumbent President will concur in the assertion of constitutionally based privilege by a former President. *See* Exec. Order No. 13233, § 4, 3 C.F.R. 815, 817 (2002) ("Absent compelling circumstances, the incumbent President will concur in the privilege decision of the former President"). Thus, the specific legal question presented to me is whether it would be legally permissible for the President to assert constitutionally based privilege in concurrence with former President Reagan's assertion.

The documents subject to former President Reagan's assertion are all internal White House deliberative documents either addressed to the President or other senior White House officials or recording deliberations involving the President or other senior White House officials, except for one deliberative memorandum from the Attorney General to the President. They all were prepared in connection with presidential decisionmaking. The documents fall squarely within the scope of the presidential communications privilege. *See generally United States v. Nixon*, 418 U.S. 683, 705–13 (1974); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 446–55 (1977). The Supreme Court has recognized

> the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately. These are the considerations justifying a presumptive privilege for Presidential communications. The privilege is fundamental to the

1

operation of Government and inextricably rooted in the separation of powers under the Constitution.

*United States v. Nixon*, 418 U.S. at 708. The presidential communications privilege is not limited to advice and other communications made directly to the President. The privilege also applies to other communications made in the course of presidential decisionmaking, such as deliberative comments made within the White House or communicated to White House staff in connection with the preparation of advice to the President. The Supreme Court has recognized that the privilege covers "communications between high Government officials and those who advise and assist them in the performance of their manifold duties." *Id.* at 705. *See also In re Sealed Case*, 121 F.3d 729, 757 (D.C. Cir. 1997) (the privilege "extends to cover communications which do not themselves directly engage the President, provided the communications are either authored or received in response to a solicitation by presidential advisers in the course of gathering information and preparing recommendations on official matters for presentation to the President"). The Supreme Court has stated that "the importance of this confidentiality is too plain to require further discussion." *United States v. Nixon*, 418 U.S. at 705.

In addition to being subject to the presidential communications privilege, these deliberative and predecisional documents are also subject to the government-wide deliberative process component of the President's constitutionally based privileges. *See generally Confidentiality of the Attorney General's Communications in Counseling the President*, 6 Op. O.L.C. 481, 484–90 (1982); *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 154–57 (1989). Counsel for former President Reagan also relied on the attorney-client privilege and the attorney work-product doctrine in support of the former President's privilege assertion. *See* Letter for Gary M. Stern, General Counsel, NARA, from John A. Mintz at 2 (Jan. 8, 2004). There is no need to consider the applicability of those privileges in light of the applicability of the presidential communications and deliberative process privileges.

Finally, the fact that these documents are from a prior presidential administration and date from the 1980s does not preclude the assertion of privilege. The Supreme Court has held that "the privilege survives the individual President's tenure." *Nixon v. Adm'r*, 433 U.S. at 449 (quoting Solicitor General's Brief at 33). The Court expressly adopted the Solicitor General's rationale:

> This Court held in *United States v. Nixon* . . . that the privilege is necessary to provide the confidentiality required for the President's conduct of office. Unless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends. *The confidentiality necessary to this*

> *exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; the privilege is not for the benefit of the President as an individual, but for the benefit of the Republic.*

*Id.* at 448–49 (quoting Solicitor General's Brief at 33) (emphasis added).

The documents that are subject to the privilege claim are not being sought by a coordinate branch of the government. Therefore, I do not believe there is a need to consider whether any asserted justification for disclosure might outweigh the President's constitutionally based interest in the confidentiality of deliberations relating to presidential decisions. However, even if a court were to conclude that assertions of constitutionally based privileges in connection with NARA releases under the PRA are subject to a balancing test, I believe that the court would find that the confidentiality interests underlying the assertion of privilege with respect to these candid, highly deliberative presidential decisionmaking documents outweigh Congress's generalized interests, in enacting the PRA, in providing for public release of presidential records.

In conclusion, it is my opinion that it is legally permissible for the President to assert constitutionally based privilege in these circumstances.

JACK L. GOLDSMITH III
*Assistant Attorney General*
*Office of Legal Counsel*